STATE *vs.* O'NEIL ; STATE *vs.* INTOXICATING LIQUOR.

*(Supreme Judicial Court of Vermont. March 1886.)*

1. SALE—GOODS FORWARDED C. O. D.—Where goods which have been ordered are forwarded by a vendor in one state, where their sale is lawful, through a common carrier, with instructions to collect the price thereof from the vendee in another state, where their sale is illegal, and the carrier is not to deliver the goods without receiving the price, the sale is not complete until the payment of the price, and hence the vendor becomes subject to any penalties prescribed by law in the second state for such illegal sale.

2 CONSTITUTIONAL LAW—SEIZURE WITHOUT WARRANT.—An act which allows the seizure without warrant of liquors kept and intended for unlawful use, is constitutional.

3. IBID.—FEDERAL CONSTITUTION.—INTERSTATE COMMERCE.—The exclusive right of Congress to regulate commerce between the states does not render unconstitutional the action of a state in providing for the seizure of liquors, although in the possession of an express company, and brought into the state from outside.

4. CRIMINAL LAW.—SECOND OFFENSE —PROOF OF FORMER CONVICTION.—STATUTE OF LIMITATIONS.—The proof of a former conviction for a similar crime may be given in evidence when it is essential to prove a second offense, although between the former conviction and the second trial a time exceeding the period of the statute of limitations has elapsed.

Indictment for selling intoxicating liquors, and action to condemn certain intoxicating liquors. Four cases. The facts will be found in the opinion.

Royce, C. J.—1. The first and most important question presented by these cases is, whether or not the intoxicating liquors in question were, in the first two cases, in contemplation of law, sold or furnished, by the respondent in the county of Rutland and State of Vermont; or, in the last two cases, held and kept for the purpose of sale, furnishing, or distribution contrary to the statute, within said county and State. The answer depends upon whether the National Express Company, by which some of said liquors were delivered to the consignees thereof, and

in whose possession the remainder were found and seized before delivery, was in law the agent of the vendors or of the vendees. If the purchase and sale of the liquors was fully completed in the State of New York, so that upon delivery of them to the express company for transportation the title vested in the consignees, as in the case of a completed and unconditional sale, then no offense against the laws of this State has been committed. If, on the other hand, the sale by its terms could only become complete so as to pass the title in the liquors to the consignees upon the doing of some act, or the fulfilling of some condition precedent after they had reached Rutland, then the rulings of the county court upon this question were correct.

The liquors were ordered by residents of Vermont from dealers doing business in the State of New York, who selected from their stock such quantities and kinds of goods as they thought proper in compliance with the terms of the orders, put them up in packages, directed them to the consignees, and delivered them to the express company as a common carrier of goods for transportation, accompanied with a bill, or invoice, for collection. The shipment was in each instance, which it is necessary here to consider, "C. O. D.," and the cases show that the effect of the transaction was a direction by the shipper to the express company not to deliver the goods to the consignees except upon payment of the amount specified in the C O. D. bills, together with the charges for the transportation of the packages and for the return of the money paid. This direction was understood by the express company, which received the shipments coupled therewith.

Whether or not, and when, the legal title in the property sold passes from the vendor to the vendee, is always a question of the intention of the parties, which is to be gathered from their acts, and all the facts and circumstances of the case taken together. In order that the title may pass, as was said by Morton, J., in Mason *vs.* Thompson, 18 Pick. 305, "The owner must intend to part with his property, and the purchaser to become its immediate owner. Their two minds must meet on this point; and if anything remains to be done before either assents it may be an inchoate contract but it is not a perfect sale." The authorities seem to be uniform on this point; and the acts of the parties are regarded as evidence by which the court or jury may ascertain and determine their intent. Benjamin on Sales, §§311, 319, note *c.* When there is a condition precedent attached to the contract, the title in the property does not pass to the vendee until performance or waiver of the condition, even though there be an actual delivery of possession. Benjamin on sales, §320, note *d.* The Vermont cases to the above points are referred to in Roberts' Digest, 610 *et seq.*, and need not be specially reviewed here.

In the cases under consideration the vendors of the liquors shipped them in accordance with the terms of the orders received, and the mode of shipment was as above stated. They delivered the packages of liquors properly addressed to the several parties ordering the same, to the express company, to be transported by that company and to be delivered by it to the consignees upon fulfilment by them of a specified condition precedent—namely, payment of the purchase-price and transportation charges—and not otherwise. Attached to the very body of the contract, and to the act of delivery to the carrier, was the condition of payment before delivery of possession to the consignee. With this condition unfulfilled, and not waived, it would be impossible to say that a delivery to the carrier was intended by the consignor as a delivery to the consignee, or as a surrender of the legal title. The goods were intrusted to the carrier to transport to the place of destination named, there to present them for acceptance to the consignee, and if he accepted them and paid the accompanying invoice and the transportation charges, to deliver them to him; otherwise to notify the consignor and hold them subject to his order. It is difficult to see how a seller could more positively and unequivocally express his intention not to relinquish his right of property or possession of goods until payment of purchase-price than by this method of shipment. We do not think the case is distinguishable in principle from that of a vendor who sends his clerk or agent to deliver the goods, or forwards them to, or makes them deliverable upon the order of his agent, with instructions not to deliver them except on payment of the price or performance of some other specified condition precedent by the vendee. The vendors made the express company their agent in the matter of the delivery of the goods, with instructions not to part with the possession of them except upon prior or contemporaneous receipt of the price. The contract of sale, therefore, remained inchoate or executory while the goods were in transit or in the hands of the express company, and could only become executed and complete by their delivery to the consignees. There was a completed executory contract of sale in New York; but the completed sale was, or was to be, in this state.

The authorities upon the above points and principles are so numerous and are so fully collated in the brief of the learned council for the state, and in the text and notes of Benjamin on Sales (4th Am. ed.) bk. 2, that we refrain from specific references in support of the conclusions at which we have arrived. These are fully supported by the decision of the United States district court in Illinois in People *vs.* Shriver, 31 Alb. L. J. 163, a case involving precisely the same question. Treat, J., says in the opinion: "In the case of liquor shipped by the defendant

to Fairfield by express, "C. O. D.," the liquor is received by the express company at Shawneetown, as the agent of the seller, and not as the agent of the buyer, and on it reaching Fairfield it is there held by the company, as the agent of the seller until the consignee comes and pays the money, and then the company, as the agent of the seller, delivers the liquor to the purchaser. In such case possession of the express company is the possession of the seller, and generally the right of property remains in the seller until the payment of the price. An order from a person in Fairfield to the defendant at Shawneetown for two gallons of liquor, to be shipped to Fairfield, "C. O. D," is a mere offer, by the person sending such order, to purchase two gallons of liquor from the defendant, and pay him for it when he delivers it to him at Fairfield, and a shipment by the defendant according to such order is practically the same as if the defendant had himself taken two gallons of liquor from his store in Shawneetown, carried it in person to Fairfield and there delivered it to the purchaser and received the price of it It would be different if the order from Fairfield to the defendant was a simple order to ship two gallons of liquor by express to the person ordering, whether such order was accompanied by the money or not. The moment the liquor under such an order was delivered to the express company at Shawneetown it would become the property of the person ordering, and the possession of the express company at Shawneetown would be the possession of the purchaser—the sale would be a sale at Shawneetown— and if it were lost or destroyed in transit the loss would fall upon the purchaser. But in the case at bar, the shipping of liquor to Fairfield, " C. O. D.," the defendant made no sale at Shawneetown, the right of property remained in himself, and the right of possession, as well as the actual possession remained in him through his agent. Had it been lost or destroyed in transit the loss would have fallen upon himself. He simply acted upon the request of the purchaser, and sent the liquor to Fairfield by his own agent, and there effected a sale by receiving the money and delivering the liquor."

II. It is insisted on the part of the claimant, in the case of State vs. Sixty-eight Jugs, etc., that §2 of No. 43 of the Acts of 1882, under which the liquors in that case were seized, is unconstitutional. Conceding the points contended for by the learned counsel for the claimant, that there is a well-recognized right of property in intoxicating liquors, that they are not *malum in se*, and that their use by law is not prohibited to citizens of this State, these propositions are, nevertheless, clearly subject to the qualification that when kept and intended for unlawful use, such liquors fall at once under the ban of the law and become subject to seizure and confiscation by such methods as are provided by law in confor-

mity with the Constitution. That intoxicating liquors, when once branded with this unlawful intent on the part of the owner or possessor become subject to confiscation by the government, and that the methods and means of their seizure and condemnation are within the police powers delegated to the legislature by art. 5, part 1 of the Constitution, is too well settled in this state and elsewhere to require extended discussion. Spalding *vs.* Preston, 21 Vt., 9; State *vs.* Conlin, 27 Ib. 318; Matter of Dougherty, Ib. 325, 327; State *vs.* Comstock, Ib. 553; Gill *vs.* Parker, 31 Ib. 610; Potter's Dwarris on Stat. c. 14; Cooley on Const. Lim. (4th ed,) 714, 727.

This section gives the officer power to seize without warrant liquor found under circumstances warranting the belief that it is intended for sale or distribution contrary to the provisions of c. 169, R. L. It does not purport to confer the power of search; nor does anything appear to show that the officer assumed to exercise such power in this case. It simply provides for the seizure, without warrant previously issued, of something which the law has declared subject to seizure and condemnation, under the police power delegated by the Constitution, as an instrument intended by the owner or possessor for a use unlawful by express statute, and dangerous to the peace, health, and good morals of the community. That the article in itself may be inocuous, may be subject of lawful ownership, or may even be susceptible of beneficial use, can no more affect the question than could the fact that certain tools were susceptible of lawful and beneficial use in mechanics save them from becoming subject to seizure and confiscation if intended by their owner or possessor for use as the instruments for accomplishing a contemplated burglary; or the harmless character of the metal and its owner's right of property therein to protect his ownership when fashioned and intended for passing as counterfeit coin. It cannot be doubted in this state since the case of Spaulding *vs.* Preston, 21 Vt. 9, and has not been elsewhere, so far as we are aware, that articles or instrumentalities once impressed with the characteristics of adaption and intended use for purposes prohibited by law and contrary to the public peace, health or morals, are subject to summary seizure under statutory or even general police regulations. That the liquors in question were intended for such use has been determined in this case as a question of fact by the tribunal designated by law, and that adjudication is conclusive.

The scope and application of art. 5, part 1 of the Constitution have been defined by this court in the cases above referred to, and in *In re Powers*, 25 Vt. 265, which has ever since been regarded as conclusive against such application of that section of the bill of rights as is here contended for by the claimant. See Gill *vs.* Parker, 31 Vt. 610; State *vs.*

Peterson, 41 Ib. 504; State *vs.* Intox. Liq., 45 Ib. 82. In Massachusetts a statute practically identical with the one in question has been held not to contravene a similar constitutional provision. Jones *vs.* Root, 6 Gray, 435; Mason *vs.* Lothrop, 7 Ib. 354. The decisions in Maine are to the same effect. State *vs.* McCann, 59 Maine, 383; State *vs.* Howley, 65 Ib. 100.

III. Concerning the claim that §8 of the Federal Constitution, conferring upon Congress the exclusive right to regulate commerce between the states has application, it is sufficient to say that no regulation of, or interference with, interstate commerce is attempted. If an express company, or any other carrier or person, natural or corporate, has in possession within this State an article in itself dangerous to the community, or an article intended for unlawful or criminal use within the State, it is a necessary incident of the police powers of the State that such article should be subject to seizure for the protection of the community. It would certainly be a strange perversion of language to claim that if this express company were to hold in possession within this State clothing infected with small pox or yellow fever, or tools with which it was intended to commit a burglary, the State government should be powerless to protect its citizens by seizing and rendering harmless such articles, simply because they might have been brought in the ordinary course of business from another state. If the express company has in possession within the State liquor, with intent to make unlawful use or disposition of it, then the right to seize it and prevent such unlawful use attaches. If it were competent for persons or companies to become superior to State laws and police regulations, and to override and defy them under the shield of the Federal Constitution simply by means of conducting an interstate traffic, it would be indeed a strange and deplorable condition of things. The rights of the States to regulate the traffic in intoxicating liquors has been settled by the United States supreme court in the license cases, 5 How. 577.

IV. Proof of the former conviction in the case of State *vs.* O'Neil was properly admitted, notwithstanding the conviction appeared to have been more than three years before the trial. No provision of the statute requires that the former conviction must have been within three years, and we have no authority to add such a provision to the law as it is plainly and unambiguously framed by the legislature. The reason for the limitation of the prosecution for the offenses charged in these cases to a period within three years of the time of commission, as for all similar limitations, is that a person should not be called upon to answer to a legal accusation after a such long time has elapsed as would, in the estimation of the law, make it difficult or impossible, by reason

of the death or removal of witnesses, the loss or destruction of evidence, or the various embarrassments likely to arise from a considerable lapse of time, for him to establish his innocence. This reason has no application to a case where the only truth that can be used on the one side or the other is matter of record. We should, therefore have no justification, even if we deemed it within the scope of our power and duty, for making application of a rule of limitation by anology in these cases.

V. The constitutional inhibition of cruel and unusual punishments, or excessive fine or bail, has no application. The punishment imposed by statute for the offense with which the respondent O'Neil is charged cannot be said to be excessive or oppressive. If he has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses. It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary, on the ground that he had committed so many burglaries that, if punishment for each were inflicted upon him, he might be kept in prison for life. The mere fact that cumulative punishments may be imposed for distinct offenses in the same prosecution is not material upon this question. If the penalty were unreasonably severe for a single offense, the constitutional question might be urged, but here the unreasonableness is only in the number of offenses the respondent has committed.

The inevitable deduction from what has been said under the first point is, that the respondent O'Neil, by what he did in respect of the transactions in question, made the express company his agent; and as what was done by such agent in the execution of the authority and instructions directly given by him, committed offenses against the statute. O'Neil must be held responsible. That he was innocent of any purpose or intent to break the law, and was unaware that what he did was contrary to law, cannot avail him in defense. State *vs.* Comings, 28 Vt. 508.

The result is that in the cases of State *vs* O'Neil, Nos. 27, 28, the respondent takes nothing by his exceptions; and in the cases of State *vs.* Intoxicating Liquor, Nos. 25, 26, the judgments are affirmed.

So ordered.—*The Reporter.*

---

## TALKING JUDGES.

English barristers are exercised over the increased tendency of modern judges to talk instead of listening to the argument, thus preventing anything like a consecutive presentation of the case. One observer, by careful note, found that of every ten minutes occupied by